IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES CUNNINGHAM, | ) | CASE NO. 5:10 CV 1001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, James Cunningham, for disability insurance benefits. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Cunningham had severe impairments consisting of:

> From March 1, 2007, the AOD, through the date of this decision, Mr. Cunningham had and has the following severe impairments (20 CFR 404.1520(c)):
>
> Degenerative disc disease of the lumbar spine, status post bilateral lumbar hemilaminectomies for decompression and foraminotomy at L2-3, L3-4, L4-5, and L5-S1 done August 1, 2007. Edema in the lower extremities. Obesity.
>
> From October 19, 2007 through the date of this decision, Mr. Cunningham had and has the following additional severe impairment (20 CFR 404.1520(c)):
>
> Right knee recurrent prepattelar bursitis, status post right knee prepatellar bursa resection done May 6, 2008....

> From October 19, 2007 through the date of this decision, Mr. Cunningham had and has the following additional severe impairment (20 CFR 404.1520(c)):
>
> Obstructive sleep apnea.[1]

He determined that none of these impairments, or combination thereof, met or medically equaled a listing in Appendix 1 to the regulations.[2] The ALJ made the following finding regarding Cunningham's residual functional capacity:

> After careful consideration of the entire record, I find that from March 1, 2007, the AOD, through the date of this decision, Mr. Cunningham had and has the residual functional capacity to perform work activities except for the following limits on his ability to work:
>
> > Mr. Cunningham could and can lift and carry up to and no more than 8 pounds occasionally and 5 pounds frequently.
> >
> > Mr. Cunningham could and can stand up to and no more [sic] 10 minutes at a time without taking a break from standing (this does not mean that he would have to also take a break from working), and up to and no more than a total of 90 minutes per 8-hour workday.
> >
> > Mr. Cunningham could and can walk up to and no more than 5 minutes at a time without taking a break from walking (this does not mean that he would have to also take a break from working), and up to and no more than a total of 1 hour per 8-hour workday.
> >
> > Mr. Cunningham could and can sit up to and no more than 20 minutes at a time without taking a break from sitting (this does not mean that he would have to also take a break from sitting), and up to and no more than a total of 6 hours per 8-hour workday.
> >
> > Mr. Cunningham could not and cannot climb steps, ramps, ladders, ropes, or scaffolds.

---

[1] Transcript ("Tr.") at 13-14.

[2] *Id.* at 17.

> Mr. Cunningham could not and cannot stoop, crouch, squat, kneel, or crawl.[3]

In light of that residual functional capacity, the ALJ decided that Cunningham cannot perform his past relevant work.[4]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Cunningham could perform.[5] The ALJ, therefore, found Cunningham not under a disability.[6]

Cunningham asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Cunningham presents two issues for decision:

- The ALJ found that Cunningham did not equal the listing in § 1.04C for disorders of the spine. The medical expert who testified at the hearing, Dr. Franklin Plotkin, expressed the opinion that Cunningham's impairment did equal that listing. Does substantial evidence support the ALJ's finding?

- The ALJ's residual functional capacity finding limited Cunningham to sitting no more than 20 minutes at a time without taking a break from standing and up to no more than a total of six hours per eight-hour workday. Cunningham submits that the maximum he can sit in a workday is four hours. Does substantial evidence support the ALJ's finding?

---

[3] *Id.* at 21-22.

[4] *Id.* at 30.

[5] *Id.* at 32.

[6] *Id.* at 34.

I conclude that substantial evidence does not support the ALJ's findings and, therefore, the decision to deny Cunningham's application must be reversed and remanded.

## Analysis

**A. Substantial evidence does not support the ALJ's finding that Cunningham did not have an impairment or a combination of impairments medically equaling a listing.**

*1. Applicable law*

If a claimant has a severe impairment or combination of impairments that equal one of the listings in Appendix 1 to Subpart P of the regulations, the claimant is disabled.[7] The listings describe impairments that the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[8] The agency will deem a claimant who meets or equals the requirements of a listed impairment conclusively disabled.[9] The claimant bears the burden of proof to show that he meets or equals the listed impairment.[10]

---

[7] *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).

[8] 20 C.F.R. § 404.1525(a).

[9] *Rabbers*, 582 F.3d at 653.

[10] *Id.* at 652.

Each listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing."[11] A claimant must satisfy all of the criteria to "meet the listing."[12]

Even if a claimant cannot demonstrate disability by meeting a listing, he may be disabled if his impairment is the medical equivalent of a listing.[13] Medical equivalent means that the impairment is "at least equal in severity and duration to the criteria of any listed impairment.[14] The claimant must demonstrate that his impairments are equivalent to a listed impairment by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment."[15]

In evaluating equivalency, the ALJ must compare the medical evidence with the requirements for the listing.[16] For meaningful judicial review, the ALJ must actually evaluate the evidence, compare it to the criteria of the listing, and give an explained conclusion.[17]

---

[11] 20 C.F.R. § 404.1525(c)(3).

[12] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

[13] 20 C.F.R. § 404.1520(a)(4)(iii).

[14] 20 C.F.R. § 404.1526(a).

[15] *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original).

[16] *Reynolds*, 424 F. App'x at 415.

[17] *Id.* at 416.

Absent such evaluation, comparison, and explanation, the ALJ's equivalency finding will not have the support of substantial evidence.[18] Failure to do so requires a remand.[19]

Obesity may be a factor in the medical equivalency determination.[20] The failure of the ALJ to properly evaluate and articulate with respect to obesity as part of the medical equivalency analysis requires a remand.[21]

## 2.     *The listing for spinal stenosis*

Counsel agree that the listing at issue for purposes of Cunningham's equivalency argument is 1.04C.[22] That listing provides:

> 1.04 *Disorders of the spine* (*e.g.*, herniated nucleus pulposus, spinal arachnoditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With: ...
>
> C.     Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[23]

---

[18] *Id.*; *May v. Astrue*, No. 4:10cv1533, 2011 WL 3490186, at *7 (N.D. Ohio June 1, 2011).

[19] *Reynolds*, 424 F. App'x at 416; *Hunter v. Astrue*, No. 1:09cv2790, 2011 WL 6440762, at *3-4 (N.D. Ohio Dec. 19, 2011).

[20] Social Security Ruling 02-1p, 67 Fed. Reg. 57859, 57862, 2002 WL 31026506 (Sept. 11, 2002).

[21] *Marok v. Astrue*, No. 5:08cv1832, 2010 WL 2294056, at *4-5 (N.D. Ohio June 3, 2010).

[22] ECF # 27 (transcript of the oral argument of December 14, 2011) at 20-21.

[23] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C.

The ALJ found that Cunningham met that listing for the five months before his surgery.[24]  Stated differently, the ALJ necessarily found that during that time period Cunningham satisfied all of the criteria of that listing.[25]  He no longer "met" the listing after his surgery because the procedure eliminated the stenosis.[26]

Franklin Plotkin, M.D., the "impartial"[27] medical expert, opined that Cunningham nevertheless equaled the listing because he had "failed spinal surgery syndrome," which meant that his back impairment equaled the listing, in severity and duration.[28]  Failed back syndrome is chronic back or leg pain that occurs after and despite spinal surgery.[29]  He also testified that Cunningham's obesity could have contributed to this severity.[30]

---

[24] ECF # 27 at 20; Tr. at 19, 21.  Although the ALJ makes specific reference to only § 1.04A, the context of his comments leads me to conclude that this reference applies with equal force to § 1.04C as well.

[25] *Id.*

[26] Tr. at 19.

[27] *Id.* at 21.

[28] *Id.* at 51, 68; 20 C.F.R. § 404.1526(a).

[29] Tr. at 51, 53; *see also*, A. Bokov, *et al.*, An Analysis of Reasons for Failed Back Surgery Syndrome, 14 Pain Physician 545 (Nov.-Dec. 2011), http://www.ncbi.nlm.nih.gov/pubmed/22086096 (abstract); C.W. Chan & P. Peng, Failed Back Surgery Syndrome, 12 Pain Med. 577 (Apr. 2011), http://www.ncbi.nlm.nih.gov/pubmed/21463472 (abstract); D.M. Long, Neurosurg. Clin. N. Am. 899 (Oct. 1991), http://www.ncbi.nlm.nih.gov/pubmed/1840393 (abstract).

[30] Tr. at 59, 68.

The ALJ rejected Dr. Plotkin's opinion as a misunderstanding of what "medically equals" means in the regulations.[31] But he did not take issue with Dr. Plotkin's opinion that Cunningham has failed back surgery syndrome, an opinion shared by William Midian, M.D., a pain management specialist and treating physician; and by Mark Cecil, M.D., a surgeon and consulting, examining physician.[32] Nor does he in any way analyze the effect of Cunningham's obesity on this impairment. The record contains abundant evidence that during the 2006-2008 time period, Cunningham's weight increased from 275 pounds to 340 pounds.[33]

For meaningful judicial review of an equivalency finding, the ALJ must evaluate the evidence, compare it to the criteria of the listing, and give a detailed explanation. I can find no evaluation and explanation sufficient for meaningful review in the ALJ's opinion. In light of the finding that Cunningham met the listing for a short period before his surgery, and that the surgery took him out of the listing because it removed the stenosis, the ALJ must explain why failed spinal surgery syndrome aggravated by obesity, which the ALJ does not deny, does not give rise to severity and duration sufficient to equal the listing. The case must be remanded for that evaluation and explanation.

---

[31] *Id.* at 21.

[32] *Id.* at 301-03, 470. The ALJ does not acknowledge, analyze, or weigh the opinions of Dr. Midian or Dr. Cecil. Since the ALJ does not comment on the diagnoses of Drs. Midian, Cecil, and Plotkin of failed back surgery syndrome, I conclude that he accepted them.

[33] *Id.* at 41, 319, 320, 321, 326, 331, 339, 367, 373, 374, 377, 385, 390, 442-45, 469-70.

**B.     On remand, the ALJ should reconsider the residual functional capacity finding and the finding at step five.**

As to the second issue, Cunningham's residual functional capacity for sitting, both counsel agree that the critical document is the functional capacity evaluation done by a physical therapist in 2009.[34] The therapist opined that Cunningham could stand less than one hour in an eight-hour workday and sit less than four hours in the time period.[35] The Commissioner basically argues that substantial evidence in the record supports the finding of the ALJ[36] that he could sit up to six hours in a workday. Counsel for Cunningham concedes that he has no problem with the residual functional capacity finding other than the portion that provides that he is capable to sitting up to six hours a day with a sit/stand option.[37]

This matter is further confused by the manner in which the ALJ posed hypotheticals to the vocational expert. In the first hypothetical, the ALJ posits limitations on lifting and carrying, standing and walking, and sitting without regard to total time in an eight-hour workday.[38] Later, imposing on that hypothetical a six-hour time duration,[39] the vocational

---

[34] *Id.* at 582.

[35] *Id.*

[36] *Id.* at 22.

[37] ECF # 27 at 7, 29.

[38] *Id.* at 63-64.

[39] "This hypothetical person cannot work more than six hours per day because of impairments." *Id.* at 66.

expert testified that no jobs would be available.[40] Counsel for the Commissioner argued that a full range of sedentary work as defined in a social security ruling contemplates the ability to work six hours out of an eight-hour day and that those limitations can be read into the ALJ's hypothetical by virtue of that ruling.[41] Even assuming that "sedentary" presumes an ability to sit for six hours in an eight-hour workday, the hypotheticals posed to the expert and the expert's responses are confusing.[42]

The Commissioner has the burden of proof at step five of the sequential evaluation process,[43] which means that the consequences of any ambiguity in or confusion caused by the hypothetical posed to the vocational expert must be born by the Commissioner. Since this case is being remanded on the step three issue, the ALJ should reconsider the step five findings after presenting the vocational expert with a clear, unambiguous hypothetical.

Furthermore, he should also reconsider the step four finding as to residual functional capacity. Dr. Plotkin did not have the benefit of the 2009 evaluation of the physical therapist.[44] That Dr. Plotkin did not have this report came to light when the ALJ questioned him about his residual functional capacity opinion.[45] After realizing that Dr. Plotkin did not

---

[40] *Id.* at 67.

[41] ECF # 27 at 26.

[42] *See*, *id.* at 26-28.

[43] *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

[44] Tr. at 53, 54.

[45] *Id.* at 53.

have the evaluation, the ALJ did not pursue an opinion.  The ALJ's inclination to obtain an opinion from the medical expert about residual functional capacity was well founded given this record.  Such an opinion would be most helpful on remand if the ALJ makes a finding at step three adverse to Cunningham.

## Conclusion

Based on the foregoing analysis, the decision of the Commissioner to deny Cunningham's application for disability insurance benefits is reversed.  The case is remanded for reconsideration of the finding that Cunningham's impairments did not equal a listing in Appendix 1, consistent with this opinion.  If the ALJ enters a finding adverse to Cunningham at step three, the ALJ must reconsider the findings at step four and step five consistent with this opinion.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[46] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated:  March 27, 2012                                  s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

---

[46] 28 U.S.C. § 2412(d)(1)(A).